[Civ. No. 7054. First Appellate District, Division Two.—November 13, 1929.]

H. G. KELSEY, Respondent, v. THOMAS E. RICHARDSON et al., Appellants.

John L. McNab, Jerome H. Bayer and George N. Crocker, for Appellants.

Tobin & Tobin, George A. Clough, Alan H. Critcher and James M. Thomas, for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to obtain the possession of a lot and the apartment house located thereon, the same being situated in San Francisco and known as the Kenilworth Apartments. He set forth his rights in two counts. The defendants answered both counts and filed a cross-complaint. The plaintiff answered the cross-complaint, but on the trial the plaintiff introduced evidence on only the first count and dismissed the second count. The trial court made findings

in favor of the plaintiff, and from a judgment entered thereon the defendants have appealed.

In the first count the plaintiff pleaded unlawful detainer. The plaintiff claimed the right to the possession by reason of being the grantee named in a trustee's deed. That deed purported to be a trustee's deed issued in the foreclosure of a trust deed which had been executed to secure a promissory note theretofore made by the defendants and which was a renewal of another note. If the proceedings were regular which resulted in the execution by the trustees of the deed held by the plaintiff, the judgment must be affirmed. We will pass, therefore, to a consideration of the claims of alleged irregularities. ▮ The first claim made by the defendants is that they were not in default when the foreclosure proceedings were commenced to foreclose the renewal note. That note was dated February 8, 1926, and provided that $3,126.50 should be paid on the principal one day after date, and that interest should be paid monthly as it became due. It also provided that if default should be made in the payment of the interest, then the whole of said principal and interest should immediately become due and payable at the option of the holder of the note. Notice of default in the payment of interest was given the tenth day of May, 1926. It is not claimed that the interest in name had been paid, but it is contended that the defendants were entitled to certain credits which, if they had been received, would have placed them in the position of not being in default but of having anticipated their payments. This claim carries us back to the inception of the entire transaction.

Before proceeding it will assist the reader to state that the litigation arose out of an attempt to finance a property valued at $165,000 or more, and in that attempt the evidence shows that the Richardsons put into the venture $8,764.50, and that the Kelseys put into the venture $8,000— and perhaps more. All other sums consisted of borrowed money. These facts must be borne in mind when, as counsel make assertions, we may have some light as to where an equity rests or does not rest.

The Richardsons bought the property in suit from Kurkjian. At that time Urrutia held (1) a second mortgage for $50,500; (2) a chattel mortgage on the furniture; (3) a

leasehold interest in and to the property, and (4) a claim against a former lessee, Mrs. Gorman, for unpaid rents, and on this last-mentioned item an action was pending. But, at the same time, Urrutia was liable on an appeal bond executed in certain litigation in which his interests in the property were involved, and that appeal bond was a potential liability against Urrutia.

As early as June or July, 1925, negotiations were commenced, among three parties, looking toward the execution of two bilateral contracts which were executed September 1, 1925. The first was between the Kelseys and Urrutia. The Richardsons called on the Kelseys at the home of the latter at Merced Falls and induced the Kelseys to agree to purchase the Urrutia interests. The Kelseys agreed to do so and authorized the Richardsons to conduct the negotiations. By the terms of those oral agreements, upon acquiring the Urrutia interests the Richardsons and the Kelseys would become tenants in common holding equal interests. For the Kelseys the Richardsons conducted the negotiations to a successful issue and purchased the Urrutia interests for $12,500. By the terms of that purchase the Kelseys executed to Urrutia a guarantee to hold him harmless on the appeal bond. The Kelseys also executed to Urrutia a promissory note in the sum of $12,500 secured by a deed of trust. The written guarantee was delivered September 1, 1925, and the note and deed of trust were delivered September 2, 1925.

The second bilateral contract was between the Kelseys and the Richardsons. Prior to the date just mentioned an agreement was entered into by which the Kelseys agreed to sell to the Richardsons their one-half interest. There is no direct evidence in the record as to what items, or what interest in any items so purchased from Urrutia, were assigned to the tenants in common by the Kelseys, nor what obligation or part of any obligation to Urrutia was assumed by the Richardsons. However, contemporaneously with the negotiations to purchase the Urrutia interests, the parties discussed the sale by the Kelseys to the Richardsons. On September 2, 1925, the Richardsons executed (1) a written guarantee, by the terms of which they agreed to hold the Kelseys harmless as to certain obligations, naming them, but not naming the Urrutia note; (2) a promissory note for

$26,585, and (3) a trust deed to secure its payment. A written memorandum used by the parties discloses that they treated the Urrutia note as a partnership liability. So treating it, they estimated the equity of the Kelseys at $26,281.15. The plaintiff testified in substance that he sold according to the written memorandum, and that the Urrutia note became the debt of the Richardsons which they were in duty bound to pay. The Richardsons did not flatly deny that statement. At the time of the purchase of the Urrutia interests the encumbrances had been so funded that $18,000 additional moneys had been borrowed. On September 3, 1925, the Urrutia note was taken up by the Richardsons.

Noting the foregoing dates, it appears that, although the deal had its inception in June, the negotiations continued, and the deal as a whole was not consummated until September 1, 1925, when each party delivered or received, as the case might be, the document which he was bound to deliver or was entitled to receive; and in this manner a three party agreement was entered into and actually executed. We may, therefore, take all of these documents together in attempting to ascertain what was the contract between the parties. (Civ. Code, sec. 1642.) When so examined it is not difficult to ascertain the rights of the parties.

As above stated, while Urrutia held a lease on the property a claim arose in his favor against Mrs. Gorman for rents. Later that claim ripened into a judgment. By the express language contained in the guarantee dated September 1, 1925, and which was a part of the transaction of the sale by the Kelseys to the Richardsons, that judgment was recognized as the property of the Richardsons. The contingent liability of Urrutia on the appeal bond ripened into a judgment. The judgment against Mrs. Gorman was so assigned as to extinguish the judgment against Urrutia. This act canceled the liability of Urrutia and it canceled the liability of the Kelseys on the guarantee they had executed to Urrutia. The Richardsons claim they were not parties to that guarantee and that they were the owners of the Gorman judgment and should have been credited with the proceeds. This contention is not sustained by any evidence. That there was no writing in evidence by which the Richardsons expressly became parties to the Urrutia guarantee

is true. But it is also true that there is no writing by which they obtained title to the judgment. Moreover, there was no writing directly showng the Richardsons to have been the purchasers of the Urrutia interests—a mortgage on the real estate $50,500, a mortgage on the furniture for additional sums, and the leasehold interest. Their title to the assets bought from Urrutia and their liability on the Urrutia liabilities both rest on indirect evidence. Moreover, there is not a particle of evidence that the parties ever agreed to partial assignments of the benefits or burdens, or both, claimed to have been purchased from Urrutia. However, we think there was evidence sufficient to sustain the conclusion of the trial court that by virtue of the sale of their one-half interest the Kelseys passed to the Richardsons the Urrutia contract—both its benefits and burdens. If so, the Richardsons may not claim that they were not in default. Be this as it may, the plaintiff made a *prima facie* showing that the Richardsons were in default for not paying their interest February 8, 1926. If the latter were entitled to any offsets or credits the burden rested on them to make the showing. This they wholly failed to do. These views are fortified by the acts of the parties. The documents executed by them were used in consonance with the views we have expressed. No claim at variance with these views was made by the Richardsons until the commencement of this litigation on or about December 19, 1927. ▇ On the trial there was evidence that the Richardsons acted under duress. The trial court found otherwise. The finding is supported by the evidence.

▇ The defendants contend that the plaintiff holds the property in dispute for their benefit. In making this assertion they point to the testimony of the defendants, which was to the effect that the plaintiff and his attorney assured the defendants before the sale that the defendants would be fully protected. In their answer the defendants ask that the court ascertain the amount due the plaintiff and the defendants would pay the same. On the trial they made no offer and no attempt to sustain their pleading.

▇ It is claimed that there was a failure of proof for the giving of notice of the time and place of the sale under the trust deed. In this connection the defendants call to our attention that on the trial the plaintiff introduced in

evidence, over the objection of the defendants, an affidavit as proof. The defendants contend that the affidavit was incompetent. (*Lacrabere* v. *Wise*, 141 Cal. 554 [75 Pac. 185].) Apparently conceding the force of the objection, the plaintiff replies that at most the affidavit was merely cumulative. Continuing, he quotes from the record, showing that he introduced the trust deed and also the deed executed by the trustee to him, and that the recitals therein prove the facts recited in the affidavit. (*Turner* v. *Marshall*, 90 Cal. App. 345 [265 Pac. 860]; *Roberts* v. *Colyear*, 179 Cal. 669, 672 [180 Pac. 937].) We think the reply is sufficient.

Objection is made to the order admitting the written notice of default. The defendants assert the notice was defective because it did not mention the volume and page in which the original was recorded. The statute did not so require. (Civ. Code, sec. 2924.)

The trial court made a finding that the defendants had committed a forcible detainer. It is claimed there is no evidence to support it. As will be seen, the defendants were not entitled as owners to remain in possession after the trust deed had been foreclosed. True, they at one time were in possession as the employees of the plaintiff. However, that relation had also been terminated. The court did not err in making the finding.

It is also claimed that there was no consideration for the largest part of the renewal note. If the court believed the evidence offered by the plaintiff the point is without merit. The plaintiff offered an abundance of evidence to show that the claim of the plaintiff amounted to the principal stated in the note, if not to a greater sum.

We find no error in the record. The judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 12, 1929, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 6, 1930.

All the Justices present concurred.